UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAMELA J. WORKMAN, ) | CASE NO. C05-2091-TSZ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner ) | RE: SOCIAL SECURITY |
| of Social Security ) | DISABILITY APPEAL |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Pamela J. Workman proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for a closed period of Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be REMANDED for an award of benefits.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1967.[1]  She completed high school with some special education classes and obtained a certificate in early childhood education.  Plaintiff previously worked as a housekeeper/maid, janitor, and day care worker.

Plaintiff filed an application for SSI benefits in April 1993.  Her application was denied initially and on reconsideration, and she timely requested a hearing. In August 1994, ALJ Thomas P. Ranney held a hearing, taking testimony from plaintiff, her mother, Dorothy Workman, vocational expert Phil Rodriguiz, and medical expert Dr. Michael Powell.  (AR 43-75.)  On September 16, 1994, ALJ Ranney issued a decision finding plaintiff not disabled. (AR 16-24.) Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review (AR 5-7), but the case returned to an ALJ on a stipulated remand from this Court (AR 536-39).

ALJ Edward P. Nichols held a second hearing in August 1998, taking testimony from plaintiff, Dorothy Workman, and vocational expert Gary Rusth.  (AR 457-85.)  Because plaintiff had commenced working in June 1997, she amended her claim to a closed period of disability between April 1993 and June 1997.  On September 28, 1998, ALJ Nichols issued a decision finding plaintiff not disabled.  (AR 436-45.)  Plaintiff timely appealed and, again, the parties stipulated to a remand.  (AR 575-81.)

ALJ Arthur Joyner held a third hearing in August 2001, taking testimony from plaintiff, medical expert Dr. Powell, and vocational expert Dr. William Weiss.  (756-97.)  On October 12,

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  2001, ALJ Joyner issued a decision finding plaintiff not disabled. (AR 607-18.) Plaintiff timely

02  appealed and, over two and a half years later – on July 22, 2004, the Appeals Counsel issued an

03  order of remand. (AR 627-28.)

04    ALJ Nichols held a fourth hearing in September 2005, taking testimony from plaintiff and

05  vocational expert Neil Bennett. (AR 798-824.) He issued a decision finding plaintiff not disabled

06  on October 17, 2005. (AR 567-74.) Plaintiff appealed this final decision of the Commissioner to

07  this Court.

08  **JURISDICTION**

09    The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

10  **DISCUSSION**

11    The Commissioner follows a five-step sequential evaluation process for determining

12  whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

13  be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

14  engaged in substantial gainful activity during the period at issue. At step two, it must be

15  determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's

16  learning disorder and personality disorder severe. Step three asks whether a claimant's

17  impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not

18  meet or equal the criteria for any listed impairments. If a claimant's impairments do not meet or

19  equal a listing, the Commissioner must assess RFC and determine at step four whether the

20  claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff

21  capable of performing simple, repetitive tasks, with mild limitations in her ability to interact with

22  supervisors, and unable to perform any of her past relevant work. If a claimant demonstrates an

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01 inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at
02 step five that the claimant retains the capacity to make an adjustment to work that exists in
03 significant levels in the national economy.  The ALJ found plaintiff capable of making an
04 adjustment to work existing in significant numbers in the national economy, including work as an
05 assembler or sorter.

06       This Court's review of the ALJ's decision is limited to whether the decision is in
07 accordance with the law and the findings supported by substantial evidence in the record as a
08 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more
09 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable
10 mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750
11 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's
12 decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.
13 2002).

14       Plaintiff argues that the ALJ erred by ignoring the testimony of the vocational expert and
15 by relying on outdated and incompetent vocational expert testimony from a prior hearing.  She
16 further argues that the ALJ failed to comply with the Appeals Council's Order of Remand to
17 properly consider the relevant medical evidence and opinions addressing the severity of her
18 functional limitations, or to provide adequate reasons for rejecting the opinions of her physicians.
19 Plaintiff requests remand for an award of benefits or, alternatively, for further administrative
20 proceedings.  The Commissioner argues that the ALJ's decision is supported by substantial
21 evidence and should be affirmed.  However, for the reasons described below, the undersigned
22 recommends that this case be remanded for an award of benefits.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

Vocational Expert Testimony

As noted above, the ALJ elicited the testimony of a vocational expert at the September 2005 hearing. He proffered a hypothetical including the following description:

> Non-exertionally I think fairly simple repetitive work, you know do the same thing over and over without any big changes and stressful adaptations to means of doing things. And I think speed is an issue, speed of processing, and I don't know what you make of that? Whether that comes with simple repetitive where you just do the same thing over and over or not, I don't know, but I think speed as in fast paced quota type work is a problem.

(AR 819.) The vocational expert testified that he did not think there would be "competitive employment that allows someone to simply work at their own pace[,]" and immediately thereafter agreed with the ALJ's interpretation that it was "[p]ossible but iffy." (AR 820-21.) The vocational expert subsequently stated that "[t]he limitation of performing work to meet speed expectations is going to be a limiting factor for any employment." (AR 821.)

When the ALJ asked the vocational expert if he could suggest jobs where speed "isn't so much of an issue," the vocational expert mentioned the position of small product assembler as repetitive work, but opined that it was also an "iffy but maybe" answer, explaining: "Assessing the speed requirement again, Your Honor, is the issue of production. You know, whether it's slow paced work, or fast paced work, where it's high speed production or bench assembly." (AR 821-22.) When counsel for plaintiff added a further limitation of hand tremors, making it difficult to manipulate small objects and do fine motor work, the vocational expert opined that such a limitation would rule out assembly work. (AR 822-23.)

Beyond noting that he testified, the ALJ did not mention or discuss the vocational expert's testimony in his decision. Instead, he affirmed the RFC outlined in the October 2001 decision,

finding plaintiff without exertional limitations, capable of performing simple, repetitive tasks, and likely to experience only mild limitations in interacting with supervisors, and stated: "Because I find the same [RFC] as found by the [ALJ] in October of 2001, I may adopt his findings regarding the jobs the claimant is capable of performing, considering that [RFC] and her vocational factors." (AR 572-73.) Concluding plaintiff was not capable of performing her past relevant work, the ALJ found plaintiff capable of working as an assembler or sorter.

Plaintiff argues that the ALJ erred in ignoring the testimony of the 2005 vocational expert. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (while ALJ need not discuss all evidence presented, he or she "must explain why 'significant probative evidence has been rejected.'") (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). She notes that the October 2001 decision relied upon by the ALJ had been vacated.

Plaintiff also argues that the vocational expert testimony from the 2001 hearing was incompetent in that it was given in response to a hypothetical not based on all of her limitations. *See Thomas*, 278 F.3d at 956 (a hypothetical posed to a vocational expert must include all of the claimant's functional limitations supported by the record) (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). She asserts that, although the ALJ acknowledged a moderate pacing limitation as assessed by the medical expert, Dr. Powell, the RFC assessment in the 2001 decision and in the hypothetical to the vocational expert upon which the ALJ relied included no pacing limitation. (*See* AR 614 (giving Dr. Powell's testimony "a great deal of consideration,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 although the claimant's current functioning and her demonstrated ability to work suggest that, on
02 the whole, she has only mild limitations in functioning with occasionally moderate restrictions in
03 work pace."), AR 615-16, 618 (assessing RFC of no physical limitations, capable of simple,
04 repetitive tasks, with mild limitations in interacting with supervisors, and describing vocational
05 expert's testimony in response to the "residual capacity as described above[.]"), and AR 794
06 (hypothetical to vocational expert corresponding to RFC of simple, repetitive tasks, with mild
07 limitations in interactions with supervisors.)) Plaintiff further notes that the hypothetical failed to
08 include any limitations due to hand tremors when writing or under stress.

09 The Commissioner asserts that the ALJ's RFC assessment was supported by the bulk of
10 the evidence in the record and that, because it was identical to that assessed in the prior hearing,
11 he permissibly used the vocational expert's testimony in that hearing to support the 2005 step five
12 finding.  The Commissioner argues that, in proffering numerous hypotheticals to the ALJ during
13 the 2005 hearing, the ALJ was merely complying with his duty to explore all possibilities, and that,
14 after reviewing all of the evidence, he properly relied on the previous vocational expert's
15 testimony.  She avers that the ALJ was not required to address the 2005 vocational expert's
16 testimony because it was not based on a hypothetical adopted by the ALJ in his findings.  The
17 Commissioner also rejects plaintiff's interpretation of the testimony of the 2005 vocational expert,
18 asserting he did not give any firm answers, testifying instead that plaintiff's ability to work was
19 "possible but iffy[.]" (AR 818-22.)

20 In reply, plaintiff rejects the contention that the ALJ considered all of the evidence of
21 record in making his decision.  *See* Social Security Ruling 96-8p ("The RFC assessment must be
22 based on *all* of the relevant evidence in the case record[.]") (emphasis in original).  Instead, she

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

points to the ALJ's assertion that he based his RFC assessment on plaintiff's "own statements and testimony and on those of her mother," as opposed to the assessment of various medical professionals. (AR 568-69.) She posits that, just as an ALJ could never find a claimant disabled based solely on her assertions of disability alone, an ALJ cannot base an RFC assessment on a claimant's bald statements. Plaintiff further asserts that the ALJ failed to address the fact that the statements of her mother, upon which the ALJ relied, were made in 2004, primarily address her ability to function after she returned to work in June 1997, and, thus, have no bearing on the relevant time period.

An ALJ's reliance on a previous vocational expert's testimony is not per se problematic. However, it is troubling that the ALJ in this case failed to make any reference to vocational expert testimony he himself elicited. *See, e.g., Walton v. Halter*, 243 F.3d 703, 710 (3d Cir. 2001) (where ALJ treated physician as both a medical and vocational expert, but ignored views without comment, the Court found: "Having secured the professional opinion of a licensed psychologist, we conclude the ALJ was not entitled to disregard it without articulated reason."); *Campbell v. Brown*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987) ("An administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers.") (citing, *e.g.*, *Brownton v. Heckler*, 571 F. Supp. 140, 143 (N.D. Cal. 1983)).

The undersigned finds the ALJ's failure to specifically address the issue of speed and/or pacing and the vocational expert's testimony on this issue problematic. Admittedly, the vocational expert's testimony – that it was "possible but iffy" plaintiff could be employed – was not entirely clear. However, given the ALJ's own hypothetical, it could be argued that a pacing limitation was

supported by substantial evidence and that the vocational expert's testimony supported plaintiff's claim.

The failure to address the speed and/or pacing issue is compounded by the lack of clarity on the same issue in the 2001 decision upon which the ALJ relied. As noted by plaintiff, the ALJ in 2001 seemed to acknowledge at least some degree of limitation with respect to work pace, stating "on the whole, she has only mild limitations in functioning with occasionally moderate restrictions in work pace." (AR 614.) Yet, his RFC ultimately included no pacing limitation. (*See* AR 615, 618.) Nor did his initial hypothetical to the vocational expert in that hearing. (*See* AR 794.) In a second hypothetical, the ALJ in 2001 asked whether a "moderate inability to maintain persistence and pace" would impact the vocational expert's testimony. (AR 795.) The vocational expert appeared to indicate that such a limitation would not change his opinion, stating at first that it "would depend on how severe it was . . . [b]ut typically as long the person gets the job accomplished with their work hours, no[,]" and subsequently, upon clarification that the severity was moderate, gave the following example: "For instance a lot of developmentally disabled people do this work. I've placed a lot when I worked with agents who were just new in the country, who couldn't speak any English or anything of that nature, and they were able to do these jobs also." (AR 795-96.) In his decision, the ALJ makes no distinction between the two hypotheticals, simply describing an RFC with no mention of pacing limitations and then describing testimony in response to the "residual capacity as described above[.]" (AR 615-16.)[2]

---

[2] Adding to the confusion, although the vocational expert appeared to testify that plaintiff *could* perform her past relevant work in response to the first hypothetical, the ALJ stated that he had testified to the contrary. (*See* AR 616 and 794.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

Finally, the Appeals Council's remand order called the RFC assessed in the 2001 decision into question. As described below, the remand order appeared to contrast the opinions of three of plaintiff's physicians as to her moderate to marked difficulties in relating to co-workers and the public and severe limitations in tolerating work pressures, with the ALJ's finding that plaintiff had mild limitations in interacting with supervisors. (AR 627.) The ALJ's reliance on the 2001 RFC assessment is, therefore, in and of itself problematic. For this reason, and for all of the reasons described above, the undersigned concludes that the ALJ's step five decision is not supported by substantial evidence.

## Order of Remand and Physicians' Opinions

The 2004 remand order from the Appeals Council noted that the 2001 hearing decision did not contain an evaluation of the treating source opinions of Drs. Paulus Vanderwielen, Anselm Parlatore, and Elizabeth Nyblade, who all believed plaintiff would have moderate to marked difficulties relating to co-workers and the public, and severe limitations in tolerating work pressures, while the ALJ found mild limitations in interacting with supervisors. (AR 627.) The Appeals Council directed the ALJ to give further consideration to the treating source opinions, to provide rationale explaining in detail the weight given to each and every report, and, as appropriate, to request the treating sources to provide additional evidence and/or further clarification. (*Id.*)

Plaintiff argues that the ALJ erred in failing to reconsider the severity of her mental limitations as directed by the Appeals Council. Her arguments relate to the ALJ's evaluation of the opinions of Drs. Vanderwielen, Parlatore, and Nyblade.

In general, more weight should be given to the opinion of a treating physician than to a

01 non-treating physician, and more weight to the opinion of an examining physician than to a non-
02 examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted
03 by another physician, a treating or examining physician's opinion may be rejected only for "'clear
04 and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).
05 Where contradicted, a treating or examining physician's opinion may not be rejected without
06 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."
07 *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion
08 of the treating physician is contradicted, and the non-treating physician's opinion is based on
09 independent clinical findings that differ from those of the treating physician, the opinion of the
10 non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d
11 1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict. *Id.*

12     Plaintiff focuses predominately on Dr. Nyblade.  She takes issue with the ALJ's assertion
13 that the March 1994 report co-signed by Dr. Nyblade "contains no assessment of the claimant's
14 ability to perform work-related functions." (AR 572.)  Plaintiff notes that the report reflected,
15 upon testing, findings of deficiency in concentration, "great difficulty on tasks which require fine
16 motor skills and problem solving abilities[. . . ] related to speed of operation as opposed to
17 problem solving abilities[,]" slight hand trembling throughout testing, poor stress tolerance, and
18 a likely "excessive concern[] with issues of personal space." (AR 258-59.)  The ALJ also criticized
19 this report as not relevant given that "the only assessment at issue is the claimant's ability to relate
20 to supervisors according to the order from the Appeals Council[.]" (AR 572.)  Plaintiff clarifies
21 that the Appeals Council's remand order also addressed her ability to relate to co-workers and the
22 public, as well as to tolerate work pressures.  (AR 627.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01      Plaintiff also takes issue with the ALJ's criticisms of interrogatories and "check off"
02 reports completed by Drs. Nyblade, Parlatore, and Vanderwielen. (*See* AR 570-72 (stating check
03 off reports lack explanation for conclusions and that written interrogatories are akin to check off
04 reports.)) She states that the ALJ made no attempt to contact Dr. Nyblade to clarify or understand
05 the basis for her conclusions. Also, plaintiff asserts that the ALJ's criticism of Dr. Parlatore's and
06 Dr. Vanderwielen's varied findings on different evaluations (*see* AR 570-71 (finding, for example,
07 certain limitations moderate on one occasion and then marked on another)), ignores the reality that
08 an individual's mental impairments can wax and wane in severity over time.

09      Plaintiff additionally points to the testimony of Dr. Powell, who found, in the 2001 hearing,
10 mild to moderate limitations in daily living activities and social functioning and marked limitations
11 in pace. (*See* AR 735-36.)[3]  She reiterates her criticism of the ALJ's reliance on her mother's
12 March 2004 statement. Finally, plaintiff avers that the ALJ never truly reconsidered her limitations
13 as directed by the Appeals Council, instead limited his evaluation only to step four and, even then,
14 simply relied on a previous, erroneous assessment. She asserts that, even if only her slow pacing
15 is considered, that limitation shows her inability to work during the relevant time period.

16      The Commissioner argues that the ALJ met his burden in reassessing the opinions of Drs.

17

---

18   [3] The ALJ reflected this testimony in the 2001 decision, but added: "He believed that the claimant was capable of improvement in work pace, however, to the 'moderate' level of functional
19 limitations." (AR 614.) The ALJ then concluded that, as indicated above, plaintiff had "only mild limitations in functioning with occasionally moderate restrictions in work pace." (*Id*.) Plaintiff
20 asserts that Dr. Powell's testimony regarding improvement in work pace should not be credited because it was made in response to the ALJ's request that he assess plaintiff's functioning over
21 an eight-year period, including the three and a half years she was employed after 1997, while this case concerns only 1993 through 1997. (AR 736-92.) However, it is difficult to determine
22 exactly what Dr. Powell concluded. (*See id*.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

Nyblade, Parlatore, and Vanderwielen, asserting the ALJ properly summarized and interpreted conflicting evidence within the record. The Commissioner points to the ALJ's reliance on plaintiff's actual experiences with supervisors, as reported by plaintiff and her mother, as showing greater functioning than "certain of her examining providers predicted from interviews . . . and testing[.]" (AR 569.) The Commissioner further points to the ALJ's recitation of various other aspects of the testimony and statements of plaintiff and her mother, including the fact that plaintiff reported she did not usually have problems with supervisors, co-workers, or the public, and that her mother reported, in 2004, that plaintiff "got along with everyone." (*See* AR 569.) Rather than directly responding to the various arguments raised by plaintiff, the Commissioner largely reiterates the ALJ's extensive discussion of the opinions of Drs. Nyblade, Parlatore, and Vanderwielen. ( *See* AR 570-72 and Dkt. 18 at 8-14.) That discussion, as with the ALJ's discussion of the testimony of plaintiff and her mother, focuses largely on plaintiff's social functioning and ability to interact with supervisors. (*Id*.)

In reply, plaintiff rejects the contention that the ALJ resolved any conflicts in the medical or clinical evidence. She asserts that there was no conflict between the physicians' opinions and that the ALJ instead perceived a conflict between these physicians' opinions and the testimony of plaintiff and her mother. Plaintiff contends that this perceived inconsistency does not serve as a legitimate basis for rejecting the opinions of Drs. Nyblade, Parlatore, and Vanderwielen.

The ALJ went too far in stating that the March 1994 report co-signed by Dr. Nyblade "contains no assessment of the claimant's ability to perform work-related functions." (*See* AR 572 and 255-59.) Plaintiff also correctly identifies an error in the ALJ's statement with respect to Dr. Nyblade that the only issue on remand was her ability to relate to supervisors. (*See* AR 572 and

627.) Yet, excluding that statement, the ALJ sufficiently addressed the opinions of Drs. Nyblade, Parlatore, and Vanderwielen as to plaintiff's ability to get along with others. (*See* AR 570-72.)

Again, as above, the ALJ erred with respect to the issue of pace. As noted, the ALJ relied on the testimony and reports of plaintiff and her mother over the opinions of her physicians. However, as reflected in the ALJ's decision, plaintiff testified that previous work in childcare "fell apart because of her slowness[,]" and that, in her housekeeping job, "she was again too slow." (AR 569 (the ALJ also stated: "She testified that it took her longer to do stuff than other people. She explained that if she had to clean up, for example, others would have to wait for her."; "The claimant clarified that she was too slow physically, not mentally."))

The ALJ did acknowledge statements made by plaintiff's mother regarding pace:

> In support of my finding that the claimant is capable of performing simple, repetitive tasks, which, I note, is not at issue in this decision, the claimant's mother described the claimant's activities of daily living as follows: the claimant got up and cared for her cat, which involved feeding and attending to the litter box. The claimant then got dressed, ate breakfast, and performed household chores, such as cleaning, laundry, simple repairs, ironing, and vacuuming. While the claimant's mother reported that the claimant was born with poor motor skills and was never able to do things as quickly as other children, she also reported that the claimant had "no problem" in her ability to dress, bathe, care for her hair, shave, feed herself, use the toilet. Ms. Workman denied that the claimant needed special reminders to care for herself or take her medications. She pointed out that the claimant prepared her own meals which were balanced. The claimant's mother also reported that the claimant managed her own finances.

(AR 570 (internal citations to record omitted.)) However, an inability to keep up a reasonable pace is not necessarily inconsistent with an ability to care for basic physical needs and to manage finances. Also, the ALJ makes no mention of numerous other comments plaintiff's mother made regarding pace: "She is slow in doing tasks.'"; "[I]t takes her a little longer than most [to prepare meals]."; "[I]t takes her 2 days to clean her apartment."; "[She follows written instructions]

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

carefully and accurately - although slowly."; "In school, she was slow to learn[.]"; "[I]t took her four years to finish the two year [Early Childhood Education] course."; and "She was very talented in childcare and teaching the children but it was the fact that she took so long to do the cleaning required to keep a job, therefore she was terminated and unable to find another job." (AR 679-85.)[4] Moreover, as noted by plaintiff, her mother's March 2004 statements are of questionable relevance to the time period at issue here – April 1993 through June 1997.

In addition, the ALJ pays little attention to the issue of pace as it relates to the opinions of Drs. Nyblade, Parlatore, and Vanderwielen. Neither the remand order from the Appeals Council, nor all of the reports from these physicians directly tackle the issue of pace. They do, however, at least address the related issue of plaintiff's ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. They are also relatively consistent in opining that plaintiff had either marked or severe limitations in this respect. (*See* AR 173 and 179-80 (Dr. Vanderwielen found a severe limitation in January 1993 and noted on another form that same month: "Her limited judgment & ability to concentrate is a hindrance to her in the modern job market. Slow performance."); AR 184 (Dr. Vanderwielen found only mild limitations in plaintiff's ability to tolerate work pressures in March 1993, but also stated: "is generally slow. wants to get a cleaning job where she does not have to work fast."); AR 251, 543, 547 (Dr. Parlatore found severe limitations in February 1994 and 1996 and marked limitations in February 1995); AR 258 (March 1994 report co-signed by Dr. Nyblade indicated plaintiff's lowest scores

---

[4] (*See also* AR 689 (plaintiff's friend, Rhonda Schroeder, stated that it took plaintiff "more than average" to prepare meals and "more than average at least 15 minutes longer than average" to perform household chores.))

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

were on tests requiring the ability to attend and concentrate and deemed scores deficient), and AR 423-25 (Dr. Nyblade indicated plaintiff had "constant" deficiencies in the areas of concentration, persistence, and pace.))[5]  While the ALJ did not err in criticizing some of the reports containing these findings as taking the form of unexplained "check box" answers or interrogatories, taken in conjunction with all of the above, the undersigned considers the findings and their relative consistency significant.

      Finally, as asserted by plaintiff, it is troubling that the ALJ relies on portions of the testimony of plaintiff and her mother over that of treating physicians' opinions without identifying any contradictory medical opinions.  For all of these reasons, the ALJ erred in his assessment of the opinions of Drs. Nyblade, Parlatore, and Vanderwielen.

      "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).  Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability.  *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d 1273,

---

[5] Dr. Parlatore found only moderate limitations in December 1996 and May 1997 and did not check the box for concentration/pace in opining as to plaintiff's marked limitations in March 1994 interrogatories. (AR 551, 555, 261.)  However, these findings do not significantly detract from the above.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians'

02  opinions, and lay testimony legally insufficient; finding record fully developed and disability finding

03  clearly required). However, courts retain flexibility in applying this "'crediting as true' theory."

04  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations

05  where there were insufficient findings as to whether plaintiff's testimony should be credited as

06  true). As stated by one district court: "In some cases, automatic reversal would bestow a benefits

07  windfall upon an undeserving, able claimant." *Barbato v. Commissioner of SSA*, 923 F. Supp.

08  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

09  error, in that some of his stated reasons for rejecting a physician's opinion were legally

10  insufficient). In this case, the undersigned recommends that the opinions of Drs. Nyblade,

11  Parlatore, and Vanderwielen – at least with respect to the issue of pace and handling work

12  pressures – be credited as true.

## Remand

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77.

This matter should be remanded for an award of benefits. As described above, the ALJ

failed to support his step five decision with substantial evidence and the opinions of the treating physicians as to plaintiff's ability to maintain a sufficient pace and handle work pressures should be credited as true. Crediting those opinions as true supports a finding that plaintiff had marked or severe limitations in responding to work pressures and/or maintaining a consistent pace. In response to a question from plaintiff's counsel in the 2001 hearing, the vocational expert testified that a marked limitation in concentration, persistence, and pace "would affect the person's ability to maintain the job because if they had a consistent problem with pace, and finishing the job, if you can't finish your job, obviously they're unlikely to keep it in a consistent basis." (AR 796.) Considering this testimony, as well as the "possible but iffy" testimony from the 2005 vocational expert, it can be said that it is clear from the record that the ALJ would be required to find plaintiff disabled.

The passage of time in this case should also be noted. Plaintiff filed her application for benefits more than thirteen years ago and participated in four different hearings. This thirteen-year wait, and the fact that additional proceedings would pose further delay, additionally weighs in favor of an award of benefits. *See Smolen*, 80 F.3d at 1292 (noting seven-year delay and additional delay posed by further proceedings); *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985) (noting administrative proceedings would only prolong already lengthy process and delay benefits).

/ / /

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

## **CONCLUSION**

For the reasons described above, this matter should be REMANDED for an award of benefits. A proposed order accompanies this Report and Recommendation.

DATED this <u>19th</u> day of June, 2006.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge